UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

SUSAN A. BROWN,

    Defendant/Cross-Claimant,

v.                                             Case No.:  2:20-cv-705-SPC-MRM

PAUL BROWN, individually and as personal representative of Alfred B. Brown's estate, MARK BROWN, WARREN BROWN, and STEPHEN BROWN,

    Defendants/ Cross-Defendants.
_____/

# **ORDER**[1]

    Before the Court are cross motions for summary judgment. Defendant/Cross-Claimant Susan Brown moved for summary judgment (Doc. 93). Defendants/Cross-Defendants Paul, Mark, and Warren Brown (together, the "Brothers") also moved for summary judgment (Doc. 101).[2] The parties responded and replied. (Docs. 99; 104; 105; 106). The Court denies both Motions without prejudice.

---

[1] Disclaimer: Documents hyperlinked to CM/ECF are subject to PACER fees. By using hyperlinks, the Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide, nor does it have any agreements with them. The Court is also not responsible for a hyperlink's availability and functionality, and a failed hyperlink does not affect this Order.

[2] While Defendant/Cross-Defendant Stephen Brown appeared, he neither responded nor signed onto any briefing. No party addresses his failure to defend. So the Court will assume (for now) his interests coincide with the Brothers'.

## BACKGROUND

This is an interpleader action over life insurance proceeds (the "Proceeds"). Alfred Brown passed away. At his death, Susan was Alfred's wife. And Alfred had four sons from an earlier marriage—the Brothers. Now, Susan and the Brothers dispute who should get the Proceeds.

On December 27, 1973, Alfred established a revocable trust, purportedly funding it with life insurance proceeds (the "Trust"). "The Great-West Life Assurance Company" apparently issued one of the identified policies. (Doc. 27-1 at 23). Twenty-four years later, "Great-West Life & Annuity Insurance Company" issued a policy on Alfred's life (the "Policy").[3] (Doc. 1-2 at 2). The Policy's beneficiary designation listed a trust "dated 12/27/93." (Doc. 27-3 at 2). The parties dispute whether that was a scrivener's error (i.e., whether "93" should read "73").

Susan filed Crossclaims against the Brothers seeking to (1) declare the Trust is the Policy beneficiary; (2) appoint a trustee; and (3) direct Great-West to disburse the Proceeds to the Trust. (Doc. 27 at 9-11).

## LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled

---

[3] No party makes any argument on the slightly different names of Great-West.

2

to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a material fact is in genuine dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The moving party bears the initial burden to show the lack of genuinely disputed material fact. *Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008). If carried, the burden shifts onto the nonmoving party to point out a genuine dispute. *Beard v. Banks*, 548 U.S. 521, 529 (2006). At this stage, courts view all facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *Rojas v. Florida*, 285 F.3d 1339, 1341-42 (11th Cir. 2002).

## DISCUSSION

Each side moves for judgment on the Crossclaims. In the briefing, Susan clarifies she seeks to reform the Policy. Under any law that might apply, reformation is a cause of action or equitable remedy.[4] Either way, reformation has elements a party must plead and prove. But the Crossclaims don't allege

---

[4] *Compare Schaffner v. 514 W. Grant Place Condo. Ass'n*, 756 N.E.2d 854, 864 (Ill. App. Ct. 2001) (cause of action), *and Romo v. Amedex Ins.*, 930 So. 2d 643, 649 (Fla. Dist. Ct. App. 2006), *and James River-Pennington Inc. v. CRSS Cap., Inc.*, No. 13870, 1995 WL 106554, at *6-7 (Del. Ch. Mar. 6, 1995), *with Deutsche Bank Nat'l Tr. Co. v. Dolci*, No. 2-11-1275, 2012 WL 6969135, at *3-4 (Ill. App. Ct. June 28, 2012) (equitable remedy), *and Schroeder v. Gebhart*, 825 So. 2d 442, 446 (Fla. Dist. Ct. App. 2002), *and Libeau v. Fox*, 892 A.2d 1068, 1072 (Del. 2006).

3

a reformation cause of action, list facts in support, or seek that remedy. So whether one calls reformation a claim or remedy, Susan wants summary judgment on an unalleged theory. Courts generally cannot grant unpled relief. *Gilmour v. Gates, McDonald and Co.*, 382 F.3d 1312, 1314-15 (11th Cir. 2004). And there is no reason to do so here.

Susan brought claims aimed at declaring rights under the Trust and appointing a trustee—not reforming a separate contract (i.e., the Policy). Her effort to confuse the line between the two falters.

Count 2 is a Florida dec action. Because Susan filed in federal court, however, the Federal Declaratory Judgment Act (the "Act") governs. *E.g.*, *Cent. Fla. Bakery, Inc. v. Depositors Ins.*, No. 6:21-cv-961-CEM-EJK, 2021 WL 4958787, at *2 n.1 (M.D. Fla. Oct. 25, 2021) (explaining the Florida Declaratory Judgment Act is procedural). Under the Act, the Court may declare the parties' rights—but there is no obligation to do so. *Ameritas Variable Life Ins. v. Roach*, 411 F.3d 1328, 1330 (11th Cir. 2005). And a dec action (on its own) is not the vehicle to reform a separate contract. *Compare* 28 U.S.C. § 2201(a) (creating a remedy for courts to "declare the rights and other legal relations"), *with id.* § 2202 (allowing further relief "based on a declaratory judgment . . . against any adverse party whose rights have been determined by such judgment"). In short, Susan's request has the issue backwards: her desired declaration is based on the Court first granting other relief through reformation. So for

4

Count 2, she must seek and obtain Policy reformation before the Court can make any declaration. *Mack v. USAA Cas. Ins.*, 994 F.3d 1353, 1357-58 (11th Cir. 2021) ("A plaintiff may follow any successful claim for a declaratory judgment with a request for supplemental relief. . . . A court may decide whether [plaintiff] is eligible for supplemental monetary relief only *after* issuing a declaratory judgment in his favor.").

Count 1 is a claim under the Florida Trust Code. That statutory scheme empowers courts to resolve disputes "concerning trusts." Fla. Stat. § 736.0201(1). A court may determine trust beneficiaries, declare their rights, and even appoint trustees. Interested parties may sue to reform a trust instrument too. *See Giller v. Grossman*, 327 So. 3d 391, 394-95 (Fla. Dist. Ct. App. 2021); Fla. Stat. § 736.0415. But Susan does not ask to reform the Trust itself. Instead, she wants to reform a separate contract. Notably absent from the Trust Code is any signal this scheme enables courts to assume jurisdiction over and alter any legal relationship that might ultimately benefit a trust. No matter who the benefits inure to; the fact remains Susan wants to reform the Policy—not the Trust. What's more, she provides no law supporting her apparently sweeping Trust Code interpretation. Instead, every case Susan cites concerned an express claim to reform a contract or an estate proceeding to reform trust documents.

5

If Susan argues the Trust Code allows reforming the Policy because it broadly grants power to "[a]scertain beneficiaries," the Court is unconvinced. Fla. Stat. § 736.0201(4)(e). Read naturally, this provision indicates courts may ascertain beneficiaries of a trust (not some separate contract). Again, however, Susan does not ask the Court to determine who are the Trust beneficiaries. Instead, she wants a declaration on who is the Policy beneficiary.

Exacerbating this issue, Susan ignores whether the Trust's choice of law provision conflicts with Count 1. The parties go back-and-forth on what law governs Policy reformation. But they overlook the Trust provision's effect on the claim alleged. The Trust says, Delaware law governs "all questions" on "construction and administration" of the Trust. (Doc. 27-1 at 20-21). Susan sues ostensibly for construction and administration of the Trust. Yet she does so under the Trust Code. It is unclear whether any differences between Florida and Delaware law impact Susan's ability to sue.[5]

To sum up, neither Crossclaim seeks reformation. And given the issues, the Court sees no reason to grant that unpled relief right now. So the parties' argument, which focuses almost exclusively on reformation, is beside the point. Considering this pleading deficiency, the Court denies both Motions.

---

[5] The Court does not imply Delaware law applies to the entire dispute. It's possible Delaware law applies to Trust administration, and Illinois law governs Policy reformation.

That said, the parties mediate next month. This will be a global mediation to hopefully resolve their various suits between several courts. Because it may help negotiations, the Court will make its current view clear. Even if properly pled, the crux of this suit is declaratory judgment. That is not the best way to resolve disputed facts (like whether Alfred created competing trusts or renewed insurance policies). Nor is it proper when a declaration serves no useful purpose. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286-88 (1995); *Rhea v. Dist. Bd. of Trs. of Santa Fe Coll.*, 109 So. 3d 851, 859 (Fla. Dist. Ct. App. 2013). As the Court understands it, the Brothers' argument on prematurity is perhaps mislabeled—but well taken.

It seems the state-court probate proceedings could be dispositive on this case for at least two reasons. First, Alfred purportedly signed a will in 2007 that revoked the Trust. If determined true in state court, then the Trust could not be a Policy beneficiary as it would not exist. Second, the parties dispute whether Susan gets anything based on pre- and post-nuptial agreements. Again, depending on how a state court rules, Susan may not be entitled to any Trust property. In other words, the answer here (at least for Susan) would be irrelevant.

Susan disagrees, saying the issues are separate. Not so. She wants the Court to appoint a trustee and disburse the Proceeds to the Trust. All the while, state courts are deciding if Alfred revoked the Trust and Susan forfeited

7

any right to benefits. In other words, she wants the Court to send almost $700,000 to a potentially defunct legal entity that will start distributing money to someone who may not be entitled to anything.

At bottom, this action appears tangential to the parties' core disputes and reliant on rulings in the probate proceedings. And this Court would likely hesitate to parachute into what seems a complicated probate matter—unfolding between three active cases in two state courts—unless there is a useful purpose for a declaration that would not interfere.

A recent decision is instructive: *Gold-Fogel v. Fogel*, 16 F.4th 790 (11th Cir. 2021). As here, *Fogel* concerned an interpleader crossclaim for a declaration on life insurance proceeds. It too had parallel state-court proceedings between the parties. And the state court's decision on questions about a marital settlement agreement would answer who got the insurance money. So the Eleventh held it proper to stay the federal action pending a state-court resolution.

The Court will not stay sua sponte. But it will set a status conference after mediation to get a handle on this case and how the parties intend to proceed. In the meantime, the parties should confer on their planned course. If they ultimately believe a state court should resolve the dispute, the Court will entertain a stipulation to disburse the Proceeds to the appropriate registry and await resolution. *See In re $165,388.23 in Interpleaded Funds*, No. 5:20-

8

CV-05063, 2020 WL 7083957, at *5 (W.D. Ark. Dec. 3, 2020) (staying interpleader action and ordering the parties to show cause why the funds should not be turned over to state court).[6] As Judge Kovachevich explained, if the parties file their claims in the relevant probate matter, the Court could dismiss this action and transfer the Proceeds. *See Espat v. Espat,* 56 F. Supp. 2d 1377, 1385 (M.D. Fla. 1999); *see also Transamerica Life Ins. v. Smith,* No. 4:18-CV-4045-LLP, 2021 WL 4295212, at *3 (D.S.D. Sept. 21, 2021).

Accordingly, it is now

**ORDERED:**

1. Defendant/Cross-Claimant's Motion for Summary Judgment (Doc. 93) is **DENIED without prejudice**.

2. Defendants/Cross-Defendants' First Amended Cross Motion for Summary Judgment (Doc. 101) is **DENIED without prejudice**.

3. The Clerk is **DIRECTED** to **SET** this case for a status conference under separate cover.

**DONE** and **ORDERED** in Fort Myers, Florida on March 28, 2022.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies: All Parties of Record

---

[6] While not published, the court ultimately sent the disputed stake to state court on the parties' stipulation. *Interpleaded Funds,* No. 5:20-CV-05063 at (Doc. 34).